1

2

3                    IN THE UNITED STATES DISTRICT COURT

4               FOR THE NORTHERN DISTRICT OF CALIFORNIA

5

6   KALITTA AIR, LLC, as assignee of          No. C 96-2494 CW
    American International Airways, Inc.,

7
            Plaintiff,                         ORDER DENYING
8                                              DEFENDANT'S
        v.                                     MOTION FOR
9                                              JUDGMENT AS A
    CENTRAL TEXAS AIRBORNE SYSTEMS, INC.,      MATTER OF LAW,
10                                             OR, IN THE
            Defendant.                         ALTERNATIVE, FOR
11                                             PARTIAL SUMMARY
    _____/       JUDGMENT

12

13       Defendant Central Texas Airborne Systems, Inc., (CTAS) moves

14  for judgment as a matter of law, or, in the alternative, for

15  partial summary judgment, on the ground that Plaintiff Kalitta Air,

16  LLC's claim for negligence is barred under the economic loss

17  doctrine.  Kalitta opposes the motion.  The matter was heard on

18  April 30, 2009.  Having considered all of the papers filed by the

19  parties and oral argument on the motion, the Court denies

20  Defendant's motion.

21                              BACKGROUND

22       This long-standing, multi-party dispute arises from the

23  conversion of several Boeing 747s from passenger to cargo craft

24  according to a design later determined by the FAA to be defective.

25  The only remaining parties are Kalitta, the successor-in-interest

26  of the owner of two such Boeing 747s, and CTAS, the FAA-licensed

27  Repair Station that converted Kalitta's two planes.

28

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

In order to convert passenger aircraft into freighter aircraft in the United States, an applicant must obtain a Supplemental Type Certificate (STC) from the Federal Aviation Administration (FAA). To do so, the applicant must submit design drawings, engineering data, and test data for a prototype aircraft. If the FAA concludes that the converted aircraft will meet applicable Federal Aviation Regulations (FARs) for airworthiness at a specified payload, the FAA issues the STC.

In March, 1988, former co-Defendant Hayes International Corporation (Hayes), an aircraft maintenance company, submitted engineering documentation to the FAA in which it stated that its design for the conversion of 747 aircraft from passenger to freighter configuration was of "equal strength or better" than a previous FAA-approved Boeing conversion design.[1] Based on this documentation, in May, 1988, the FAA granted Hayes two STCs, which permitted the use of its design for the conversion of 747-100 aircraft. In issuing these STCs, the FAA certified that Hayes had demonstrated that each change in the design complied with the airworthiness and safety requirements of FAR part 25. See 14 C.F.R. § 21.463. After the FAA issued the STCs to Hayes, Hayes contractually assigned them to GATX.[2]

---

[1] This engineering methodology is known as "equivalent strength or better." The methodology relies on an element-by-element comparison between the proposed design and a previously-approved design to determine whether each element of the proposed design is of equal strength or better than each element of the previously-approved design.

[2] GATX includes GATX/Airlog Company, GATX Aircraft Corporation, GATX Capital Corporation, and Airlog Management Corporation.

2

United States District Court
For the Northern District of California

In June, 1994, GATX contracted with Elsinore[3] to obtain an STC for the conversion of Boeing 747-200 aircraft to cargo use. Elsinore relied in part on the 1988 STC design in obtaining the 200 STC.

Between 1988 and 1994, GATX entered into a series of modification agreements with Evergreen International Airlines, Inc. (Evergreen), General Electric Capital Corporation (GECC), and Kalitta, or their predecessors in interest, to convert six Boeing 747-100 aircraft from passenger to freighter configuration. Evergreen owned two of the six aircraft, GECC owned two, and Kalitta owned two. In 1994, GATX also entered into a modification agreement with Kalitta to convert a Boeing 747-200 aircraft. The 747-100 conversions were performed for GATX by Pemco and CTAS, using the STCs obtained by Hayes. Pemco is the successor-in-interest to Hayes. The 747-200 modification was performed by CTAS, using the STC obtained by Elsinore.

In late 1995, the FAA's Seattle Aircraft Certification Office (ACO) reviewed the STCs for GATX's design. On January 3, 1996, the FAA issued Airworthiness Directive (AD) 96-01-03, which became effective January 30, 1996. The AD reduced the permissible payload of the aircraft modified pursuant to the STCs obtained by Hayes and Elsinore from 220,000 pounds to approximately 120,000 pounds. The FAA explained that this amendment was

> prompted by a determination that these airplanes are incapable of carrying the currently certified payload

_____

[3] Elsinore includes Elsinore Engineering, Inc., Elsinore Aerospace Services, Inc., Elsinore L.P., and Elsinore Aerospace Services, L.P.

3

1  
2  
3  
4  
> limits due to the missing external structural doublers located forward of the surround structure of the main deck side cargo door, and deficiencies in the main deck doors.  The actions specified in this AD are intended to prevent collapse of the aft fuselage due to inadequate strength in the airplane structure, and subsequent separation of the aft fuselage from the airplane.

5  6 Fed. Reg. 116 (summary).  According to Kalitta, the AD

6  effectively grounded the aircraft.  Kalitta has not operated or

7  leased any of the aircraft since the AD was issued.

8      This matter has been tried twice.  During the first trial in

9  2001, among other results, the jury found against Kalitta on its

10  negligent misrepresentation claim against CTAS.  Kalitta appealed

11  this Court's adverse summary judgment ruling on its negligence

12  claim and this Court's decision to exclude a certain FAA report

13  from the jury during the 2001 trial on its negligent

14  misrepresentation claim.  The Ninth Circuit agreed with Kalitta on

15  these points and so reversed and remanded.  GATX/Airlog Co. v.

16  Evergreen Int'l Airlines, Inc., 52 Fed. Appx. 940 (9th Cir. 2002).

17      CTAS subsequently moved for summary judgment on the grounds,

18  among others, that any recovery on Kalitta's claims was barred by

19  the economic loss rule.  The Court denied the motion, assuming

20  without deciding that the economic loss rule applied to the

21  negligence claim, but finding that Kalitta had introduced

22  sufficient evidence to create a disputed issue of material fact as

23  to whether its airplanes suffered physical damage as a result of

24  CTAS' allegedly negligent performance of its contractual

25  obligations.  See December 11, 2003 Order Denying Defendant's

26  Motion for Summary Judgment and Granting Plaintiff's Motion to

27  Enforce Remand at 8.  The Court also ruled that the economic loss

28                                4

United States District Court
For the Northern District of California

doctrine did not apply to Kalitta's negligent misrepresentation claim and thus that claim was not barred.  <u>Id.</u> at 9.

In response to a request by Kalitta for clarification, the Court ruled that the economic loss rule did apply to Kalitta's negligence claim, but that Kalitta could attempt to prove pursuant to <u>Aas v. Superior Court</u>, 24 Cal. 4th 627 (2000), that it fell within an exception to the rule if it could show either damage to other property or involuntary out-of-pocket losses, or that the other factors identified in <u>J'Aire Corp. v. Gregory</u>, 24 Cal. 3d 799 (1979), were more strongly present than in <u>Aas</u>.  <u>See</u> August 19, 2004 Order Granting Plaintiff's Request for Clarification and Denying Defendant's Request to File a Similar Request.  After the hearing on those issues, the Court found that Kalitta had failed to make such a showing, and that the economic loss doctrine therefore applied to bar Kalitta's negligence claim.  <u>See</u> September 20, 2004 Consolidated Order Clarifying Court's December 11, 2003 Order. Kalitta then moved for leave to file a motion for reconsideration of the September 20, 2004 Consolidated Order, and supported its motion with new evidence of out-of-pocket losses.  CTAS opposed that motion.[4]  Along with proposed jury instructions, both parties also submitted additional briefing on the issue of the economic loss doctrine.  While resolving the parties' disputes over the jury instructions, the Court concluded that there was not enough evidence to find as a matter of law that there was no damage to

---

[4]Kalitta's motion for reconsideration was later denied as moot.  <u>See</u> March 2, 2005 Order Denying Plaintiff's Motion for Leave to File Motion for Reconsideration.

other property and no involuntary out-of-pocket losses.

The Court instructed the jury on the economic loss doctrine, and explained that Kalitta could not recover under its negligence cause of action unless it proved that it had suffered (1) physical damage to its property other than the product CTAS provided, or (2) involuntary, out-of-pocket losses.  February 15, 2005 Jury Instructions at 11.  The jury was also charged with determining "what is the 'product' CTAS provided, and what is Kalitta's 'other property.'"  Id. at 11-12.

Despite more than two weeks of deliberation and the parties' stipulation to a less than unanimous verdict, the jury was unable to reach a verdict on either the negligence or the negligent misrepresentation claims, or on the specific issue of whether Kalitta had suffered the type of harm needed to satisfy the economic loss rule.  The Court declared a mistrial on March 2, 2005.  On July 22, 2005, the Court granted CTAS' renewed motion for Judgment as a Matter of Law (JMOL) as to Kalitta's negligence claims, denied CTAS's JMOL motion as to Kalitta's negligent misrepresentation claim and, at the request of Kalitta, certified the interlocutory order for appeal pursuant to 12 U.S.C. § 1292(b).  The Ninth Circuit affirmed the Court's order with respect to the negligent misrepresentation claim and reversed with respect to the negligence claim.

The Ninth Circuit held that, in the absence of personal injury, physical damage to property, a "special relationship" between the parties, or some other common law exception to the rule, recovery for purely economic loss is foreclosed in actions

United States District Court
For the Northern District of California

for negligence.  <u>Kalitta Air, LLC v. Central Texas Airborne</u>, 2008 WL 4542859, *2 (9th Cir.).  The court held that this case did not involve personal injury and that there was insufficient evidence to allow a jury to conclude that there was actual, present, and appreciable damage to property other than the product itself. However, the court remanded for a determination of the applicability of the "special relationship" doctrine under <u>J'Aire Corp. v. Gregory</u>, 24 Cal. 3d 799, 804-05 (1979).

LEGAL STANDARD

A motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b) renews the moving party's prior Rule 50(a) motion for directed verdict at the close of all the evidence.  The post-trial motion may be raised only as to the same claims and upon the same grounds as the prior motion.  <u>Murphy v. City of Long Beach</u>, 914 F.2d 183, 186 (9th Cir. 1990); <u>Collins v. City of San Diego</u>, 841 F.2d 337, 342 (9th Cir. 1988).  If no verdict was returned by the jury, the court may either order a new trial or direct entry of judgment as a matter of law.  Fed. R. Civ. P. 50(b)(2).

Judgment as a matter of law after the verdict may be granted only when the evidence and its inferences, construed in the light most favorable to the non-moving party, permit only one reasonable conclusion as to the verdict.  Where there is sufficient conflicting evidence, or if reasonable minds could differ over the verdict, judgment after the verdict is improper.  <u>See, e.g.</u>, <u>Kern v. Levolor Lorentzen, Inc.</u>, 899 F.2d 772, 775 (9th Cir. 1990); <u>Air-Sea Forwarders, Inc. v. Air Asia Co.</u>, 880 F.2d 176, 181 (9th Cir.

7

1989); Peterson v. Kennedy, 771 F.2d 1244, 1252 (9th Cir. 1985);

L.A. Mem'l Coliseum Comm'n v. NFL, 726 F.2d 1381, 1387 (9th Cir.

1984).  The fact that a mistrial was declared because of jury

deadlock does not alter the standard to be applied.  Headwaters

Forest Defense v. County of Humboldt, 240 F.3d 1185, 1197 n.4 (9th

Cir. 2000), cert. den., 537 U.S. 1000 (2002).

The standard for granting judgment as a matter of law mirrors

that for granting summary judgment.  Reeves v. Sanderson Plumbing

Prods. Inc., 530 U.S. 133, 150 (2000).  Summary judgment is

properly granted when no genuine and disputed issues of material

fact remain, and when, viewing the evidence most favorably to the

non-moving party, the movant is clearly entitled to prevail as a

matter of law.  Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477

U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d

1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of showing that there is no

material factual dispute.  Therefore, the Court must regard as true

the opposing party's evidence, if supported by affidavits or other

evidentiary material.  Celotex, 477 U.S. at 324; Eisenberg, 815

F.2d at 1289.  The Court must draw all reasonable inferences in

favor of the party against whom summary judgment is sought.

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d

1551, 1558 (9th Cir. 1991).

Material facts which would preclude entry of summary judgment

are those which, under applicable substantive law, may affect the

outcome of the case.  The substantive law will identify which facts

United States District Court
For the Northern District of California

are material.   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
(1986).

DISCUSSION

I.   Ability to Address J'Aire Factors

Kalitta argues that it cannot fairly address the J'Aire
special relationship test in this motion because motions for
judgment as a matter of law are based on evidence presented at
trial and the factors underlying the test were not addressed in the
second trial.   For the same reason, Kalitta also argues that CTAS
should be barred from introducing arguments pertaining to these
factors in their present motion for judgment as a matter of law.

CTAS does not dispute the fact that the second trial focused
on other issues and that it supports its present motion with
evidence presented in trial as well as other evidence presented to
the Court throughout pretrial proceedings.   However, CTAS labeled
its motion as one for JMOL, or, in the alternative, for partial
summary judgment.   Therefore, Kalitta had a fair opportunity to
oppose CTAS' motion with other evidence in the record that was not
specifically introduced at trial.   Further, in prior proceedings
before the Court, the parties briefed and argued the J'Aire
factors.   See August 19, 2004 Order Granting Plaintiff's Request
for Clarification and Denying Defendant's Request to File a Similar
Request.   Thus, Kalitta's argument that it cannot fairly address
these issues has no merit.

II.   Law of the Case

"Under the law of the case doctrine, a court is generally
precluded from reconsidering an issue that has already been decided

9

**United States District Court**
For the Northern District of California

by the same court, or a higher court in the identical case."
<u>United States v. Alexander</u>, 106 F.3d 874, 876 (9th Cir. 1997)
(internal quotations omitted).  Kalitta argues that, under the law
of the case doctrine, the Court is bound by its prior determination
made on October 15, 1997 that Kalitta satisfied each of the <u>J'Aire</u>
elements.[5]  The Court disagrees.

There are important differences between the facts of the case
and the status of the law on October 15, 1997 and today.  For
example, the October 15, 1997 order discusses whether a special
relationship existed between Kalitta and Hayes-Pemco, the company
that designed and substantiated the 747-100 STC's, not Kalitta and
CTAS, the present remaining defendant in the case.  Moreover,
California law has undergone considerable development in the area
of the economic loss doctrine since the October 15, 1997 Order
Kalitta relies upon.  Further, the Ninth Circuit particularly
instructed the Court to "weigh all six <u>J'Aire</u> factors" on remand.
<u>Kalitta Air, LLC v. Central Texas Airborne</u>, 2008 WL 4542859, *3.
The Court must follow the Ninth Circuit's mandate.  In sum, the law
of the case doctrine does not prevent CTAS from arguing that no
special relationship exists between it and Kalitta.

IV.  <u>J'Aire Corp. v. Gregory</u>

In <u>J'Aire</u>, 24 Cal. 3d at 803-05, the California Supreme Court
addressed a lessee's claim for damages against a contractor hired
by the lessor on the basis that the contractor's delay in
completing certain renovations to the leased premises caused the

---

[5] The Court notes that the order Kalitta attached to its
opposition is dated June 5, 1997, not October 15, 1997.

lessee to suffer economic losses.  The court reasoned that the
lessee was entitled to bring such a claim, even though the lessee's
only injury was its prospective economic advantage, if a "special
relationship" existed between the lessee and the contractor.  Id.
The J'Aire court recited six factors for courts to consider in
determining if such a special relationship exists and concluded
that application of the six factors to the facts presented
demonstrated that such a special relationship did exist and thus
that the lessee was entitled to recover.  Id.  The six factors are

> (1) the extent to which the transaction was intended to
> affect the plaintiff; (2) the foreseeability of harm to the
> plaintiff; (3) the degree of certainty that the plaintiff
> suffered injury; (4) the closeness of the connection between
> the defendant's conduct and the injury suffered; (5) the
> moral blame attached to the defendant's conduct and (6) the
> policy of preventing future harm.

Id. at 804.

The Court addresses the J'Aire factors in turn.

A.    First J'Aire Factor: Extent Transaction Intended to
      Affect Kalitta

The first factor to analyze under J'Aire is "the extent to
which the transaction was intended to affect the plaintiff."  The
relevant transaction must affect the plaintiff in particular as
opposed to similarly situated purchasers.  For instance, in Ott v.
Alfa-Laval Agri, Inc., 31 Cal. App. 4th 1439 (1995), a dairy farmer
sought economic damages from the manufacturer of an automatic
milking system.  The court concluded that the plaintiff failed to
satisfy the first J'Aire factor because "neither the pleadings nor
the evidence suggests the 1970 milking system was 'intended to
affect' the plaintiffs in any way particular to the plaintiffs, as

11

**United States District Court**
For the Northern District of California

opposed to all potential purchasers of the equipment." <u>Id.</u> at 1455. The court specifically noted that the manufacturer "had no special knowledge concerning [the plaintiff dairy operators'] equipment requirements or those of any relevant subclass of dairy operators." <u>Id.</u> at 1457 n.10.

Similarly, in <u>Fieldstone Co. v. Briggs Plumbing Prods. Inc.</u>, 54 Cal. App. 4th 357 (1997), a developer brought an action against the manufacturer of allegedly defective bathroom sinks, hundreds of which were installed in houses the developer had built. The manufacturer in that case "knew that their bathroom sinks would be installed in middle-class homes" and that "the sinks were specifically made for that purpose." <u>Id.</u> at 368. Nevertheless, the court held that the transactions in question were not "intended to affect [the plaintiff] or the homeowners 'in any way particular to [them], as opposed to all potential purchasers of the equipment.'" <u>Id.</u> (quoting <u>Ott</u>, 31 Cal. App. 4th at 1455).

In <u>Zamora v. Shell Oil Co.</u>, 55 Cal. App. 4th 204 (1997), the defendants manufactured allegedly defective pipes installed in the plaintiffs' homes. The court held, "As in <u>Ott</u>, the record here does not support a finding that Shell's actions were intended to affect the 14 homeowners in any manner different from the intended effect on all homeowners with PCB pipes." <u>Id.</u> at 212.

More recently, in <u>Greystone Homes, Inc. v. Midtec</u>, 168 Cal. App. 4th 1194 (2008), Greystone Homes, a home builder, brought a negligence suit against Midtec, the manufacturer of certain piping fittings installed in the homes. Midtec manufactured the fittings at issue for another entity, RTI, who in turn incorporated the

fittings into a plumbing system.  A plumbing contractor incorporated the RTI plumbing system into the homes that Greystone was building.  The court held that "Midtec's sale of the fitting was not intended to affect Greystone in a manner sufficient to give rise a duty on Midtec's behalf to use due care to avoid economic injury to Greystone."  Id. at 1231.

Applying these cases to the present facts, and construing the evidence and its inferences in the light most favorable to Kalitta, the Court concludes that the transactions were intended to affect Kalitta.  The purpose of CTAS' modifications was the conversion of Kalitta's planes.  This was not a transaction in which both parties were unknown to one another the entire time.  Considerable testimony shows that CTAS and Kalitta had substantial and ongoing interaction about the modification before Kalitta entered into the transaction.  Even after Kalitta entered into its first contract with GATX, Kalitta continued to have significant interactions with CTAS about the modifications.  For instance, Kalitta representatives were onsite eighty-five percent of the time during the conversion to oversee the progress.  During this time, Kalitta had access to CTAS workers and had the ability to comment on the modification to CTAS.  In fact, one of Kalitta's on-site representatives, Tim Keller, had the authority to refuse to accept a modified aircraft if he thought that the modification was performed improperly.

CTAS does not dispute that it had considerable interaction with Kalitta before and during the modification process.  However, CTAS asserts that its interaction with Kalitta was no different

13

United States District Court
For the Northern District of California

than interactions CTAS had with any other aircraft owner seeking the same modification.  Hayes modified five aircraft and CTAS modified three aircraft prior to the Kalitta modifications.  All eight of these aircraft were modified pursuant to the same two FAA-approved STCs.  Because the STCs were not specifically designed for Kalitta only, CTAS argues that the modification made for Kalitta pursuant to the STCs was not intended to affect Kalitta in particular.  However, CTAS concedes that "each aircraft modified pursuant to these STCs is unique in some ways," reply at 8, because "each aircraft is a custom repair project requiring literally thousands of additional changes for a very specialized purchaser."  Id. (quoting trial testimony of CTAS employee Gary Stripling).  Nonetheless, CTAS asserts that these "workmanship deviations" do not establish that CTAS did anything as a result of Kalitta's special needs or requirements.

Contrary to CTAS's assertions, the aircraft modifications are not akin to the mass manufacturing of sinks and pipe fittings in the cases it cites.  Nor is the relevant transaction merely GATX obtaining the STC.  Rather, Kalitta presented sufficient evidence that the modifications at issue required particularized workmanship for an individual purchaser.  Therefore, the first J'Aire factor weighs in favor of finding a special relationship between Kalitta and CTAS.

B.    Second Factor: Foreseeability

The second factor analyzed under J'Aire is the foreseeability of harm to the plaintiff.  Here, the FAA's issuance of the AD, which effectively grounded Kalitta's planes, was a reasonably

foreseeable consequence of CTAS's alleged negligence.  CTAS relies on the fact that it performed its modification work pursuant to FAA-approved STCs.  However, Kalitta presented evidence that the FAA approved the STCs based on data that CTAS should have known would lead to structural problems in the aircraft.  Kalitta asserts that CTAS knew that the modification designs were deficient but failed to correct these problems.  Kalitta's substantial loss of income was a foreseeable result of CTAS's alleged conduct.

C.   Third Factor: Degree of Certainty of Plaintiff's Injury

The third J'Aire factor is the degree of certainty that Kalitta suffered the injury.  The Ninth Circuit instructed the Court to "consider all admissible evidence of 'appreciable, nonspeculative, present injury,' including evidence of loss of business and profits."  Kalitta Air, 2008, WL 4542859, *3.  The Court may not limit "the definition of injury to property damage and involuntary, out-of-pocket expenses."  Id.  Here, Kalitta introduced evidence that its business losses exceeded $235 million.  Additionally, Kalitta allegedly suffered $20 million in damages from the direct loss of the aircraft, which were turned to scrap after the FAA issued the AD.  These damages allegations and the evidence supporting them establish a significant degree of certainty that Kalitta suffered an injury.

D.   Fourth Factor: Closeness of the Connection Between CTAS's
     Conduct and Kalitta's Injury

Related to the second factor, foreseeability, is the closeness of the connection between CTAS' conduct and Kalitta's injury.  Bryant v. Glastetter, 32 Cal. App. 4th 770, 781 (1995).  The

15

greater the likelihood that the plaintiff's injury would have happened absent the defendant's conduct, the less likely the fourth factor is satisfied.  Kalitta presented evidence that CTAS should have conducted more investigation into the modification design and discovered that omitting reinforcing doublers in the aircraft's fuselage would compromise the structural integrity of the aircraft. The absence of these doublers led the FAA to issue the AD, which effectively grounded Kalitta's aircraft.  Therefore, this factor weighs in favor of finding a special relationship.

E.    Fifth Factor: Moral Blame

To satisfy this factor of the J'Aire analysis, CTAS's conduct must be blameworthy.  Here, Kalitta presented evidence that CTAS failed to act after it learned of a potential safety deficiency in the modification design.  Although the FAA initially approved the design, CTAS knew of this alleged deficiency before completing the modification and before the FAA determined that continued use of these aircraft above a certain payload was unsafe.

An internal CTAS memo further evidences moral blameworthiness on CTAS's part.  This memo is about the modification of a critical joint to the airframe integrity.  It states that CTAS "must do the following: (1) generate loads, analyze the joint, and redesign it; (2) refuse to install poorly designed parts; [or] (3) continue with the MOD per STC.  The last option is ethically indefensible and will set a bad precedent."  CTAS chose the last option.

F.    Sixth Factor: Public Policy

The final J'Aire factor addresses whether the public policy of avoiding future harm would be served by finding a special

16

**United States District Court**
For the Northern District of California

relationship in this case.  CTAS argues that there is no evidence that it, or any other modification facility, will ever modify another aircraft using the subject STCs.  Therefore, these STCs will never cause harm to anyone in the future.  Even though these STCs will not lead to future harm, public policy will generally be better served if aircraft contractors face liability in tort for negligent modifications.  Thus, this factor also weighs in favor of finding a special relationship.

G.   Bily v. Arthur Young

CTAS argues that Bily v. Arthur Young, 3 Cal. 4th 370 (1992), presents additional factors that the Court must consider in addition to those laid out in J'Aire.  However, Bily discusses the policy implications that can come from relying only on the foreseeability factor of the special relationship test.  Bily does not add additional factors to the J'Aire test.  For the reasons described above, public policy weighs in favor of finding a special relationship.

CONCLUSION

For the foregoing reasons, the Court denies CTAS' motion for judgment as a matter of law, or, in the alternative, for partial summary judgment (Docket No. 2019).  The parties are ordered to attend further private mediation with the same mediator that conducted the previous mediation within ninety days of this order.

IT IS SO ORDERED.

Dated: 6/8/09

_____
CLAUDIA WILKEN
United States District Judge

17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California