1  SEDGWICK LLP
   GREGORY C. READ (STATE BAR NO. 049713)
2  gregory.read@sedgwicklaw.com
   GAYLE L. GOUGH (STATE BAR NO. 154398)
3  gayle.gough@sedgwicklaw.com
   CAITLIN C. ROSS (STATE BAR NO. 271651)
4  caitlin.ross@sedgwicklaw.com
   333 Bush Street, 30th Floor
5  San Francisco, CA  94104
   Telephone:     (415) 781-7900
6
   STEVEN L. LEVITT & ASSOCIATES, P.C.
7  STEVEN L. LEVITT
   129 Front Street
8  Mineola, N.Y. 11501
   Telephone:     (516) 248-9700
9
   Attorneys for Defendant
10 CENTRAL TEXAS AIRBORNE SYSTEMS, INC.

11

12                  UNITED STATES DISTRICT COURT

13                NORTHERN DISTRICT OF CALIFORNIA

14 KALITTA AIR, L.L.C. as assignee of          CASE NO. 4:96-cv-02494-CW
   American International Airways, Inc.,
15                                             **DEFENDANT CTAS'S RULE 50(a)**
                    Plaintiff,                 **MOTION FOR JUDGMENT AS A**
16                                             **MATTER OF LAW**
        v.
17
   CENTRAL TEXAS AIRBORNE SYSTEMS,             Trial Date:  October 31, 2011
18 INC., et al.,                               Judge:       The Hon. Claudia Wilken

19                  Defendant.

20

21 I.      **INTRODUCTION**

22         Kalitta's claim of negligence against CTAS is fatally flawed both legally and factually.

23 No reasonable jury could conclude that there is "a legally sufficient evidentiary basis" to find in

24 Kalitta's favor.  Fed. R. Civ. P. 50(a)(1).  Accordingly, CTAS is entitled to judgment as a matter

25 of law.  CTAS understands that the Court intends to allow the jury to reach a verdict, but CTAS

26 sets forth the arguments below so that they may be renewed, if necessary, after the entry of

27 judgment.  *See* Fed. R. Civ. P. 50(b).

28 / / /

SF/2633324v1                                        1              Case no. 4:96-cv-02494-CW
           DEFENDANT CTAS'S RULE 50(a) MOTION FOR JUDGMENT AS A MATTER OF LAW

1      II.      **ARGUMENT**

2            In an action for negligence, it is the plaintiff's burden to prove that the defendant owed it

3      a duty of care, that the defendant breached its duty, that the breach proximately caused injury to

4      the defendant, and that the defendant suffered nonspeculative damages as a result of that injury.

5      *See, e.g.*, *Paz v. California*, 22 Cal. 4th 550, 559 (2000).  Kalitta has fallen short on every score,

6      even when all reasonable evidentiary inferences are drawn in its favor.

7            A.       **CTAS Owes No Duty To Protect Kalitta From Purely Economic Losses.**

8            Kalitta is legally prohibited from seeking recovery from CTAS in negligence for purely

9      economic damages unless there is a "special relationship" between Kalitta and CTAS.  The

10     existence of a special relationship is a question of law that requires the court examine the six

11     factors set forth in *J'Aire v. Gregory*, 24 Cal. 3d 799, 804 (1979), and then "make a pragmatic

12     assessment" with an eye toward the "three central concerns" outlined in *Bily v. Arthur Young &*

13     *Co.*, 3 Cal. 4th 370, 406 (1992).

14           All of the *J'Aire* factors weigh against finding a special relationship between Kalitta and

15     CTAS.  First, CTAS's allegedly negligent acts with respect to doublers were not intended to

16     have "a particularized effect" on Kalitta; rather, they equally affected all aircraft owners who

17     chose to have their planes modified pursuant to the Hayes STCs.  *Desert Healthcare Dist. v.*

18     *Pacificare, FHP, Inc.*, 94 Cal. App. 4th 781, 792 (2001).  Second, it was not highly foreseeable

19     that CTAS's relevant conduct—most of which took place before CTAS even began working on

20     AIA's planes—would harm Kalitta.  *See, e.g.*, *Bily*, 3 Cal. 4th at 398.  Third, Kalitta was not

21     damaged as a direct result of CTAS's conduct.  *See, e.g.*, *Ray v. Bluehippo Funding, LLC*, 2008

22     WL 1995113, at *6 (N.D. Cal. 2008).  Fourth, there is no close causal connection between

23     CTAS's conduct and the FAA's eventual issuance of an Airworthiness Directive, much less a

24     close connection between CTAS's conduct and Kalitta's alleged economic injuries.  *See, e.g.*,

25     *Bily*, 3 Cal. 4th at 398.  Fifth, CTAS's conduct did not entail "a high degree of moral culpability

26     beyond that associated with ordinary negligence."  *Rotolo v. San Jose Sports & Entertainment,*

27     *LLC*, 151 Cal. App. 4th 307, 337 (2007).  Sixth, requiring CTAS to face liability in negligence

28     / / /

Sedgwick LLP

1    would not advance the policy of avoiding future harm; CTAS has ample other incentives

2    to conduct itself appropriately.

3    Even if only some of these factors weigh in CTAS's favor, on balance those factors

4    preclude a special relationship finding in light of the central concerns underlying the doctrine.

5    First, holding that CTAS has a duty to avoid economic harm to Kalitta in this context would

6    expose CTAS to potential liability vastly in excess of its alleged fault.  Second, Kalitta is a

7    sophisticated party that should be encouraged to take advantage of the ample alternative means it

8    has to protect its interests.  And third, exposing CTAS to liability in negligence would likely

9    result in substantial costs on CTAS and similar parties without bringing about any meaningful

10   improvement in the quality or safety of their products or services.  *Cf. Bily*, 3 Cal. 4th at 398.

11   Moreover, "recovery for economic loss has been narrowly confined to situations where 'the

12   injury is not part of the plaintiff's ordinary business risk.'"  *Fieldstone Co. v. Briggs Plumbing*

13   *Products, Inc.*, 54 Cal. App. 4th 357, 369 n.9 (1997) (quoting *J'Aire*, 24 Cal. 3d at 808).  Kalitta

14   is improperly attempting to obtain relief for a typical hazard of the air cargo industry.

15                    **B.      CTAS Did Not Breach Any Duty Of Care.**

16   Even if CTAS owed a duty of care to Kalitta to prevent economic loss, Kalitta is required

17   to prove that CTAS breached that duty by failing to "use such skill, prudence, and diligence" as

18   other repair stations "commonly possess and exercise."  *Budd v. Nixen*, 6 Cal. 3d 195, 200

19   (1971).  Conduct typically does not fall below the standard of care unless it creates an

20   "unreasonable risk of harm."  Restatement (Second) Torts § 282.

21   Kalitta has failed to offer competent evidence that would allow a reasonable factfinder to

22   conclude that CTAS failed to conduct itself as a reasonably careful repair station.  The only

23   Kalitta witness to attempt to opine directly on this subject was Mr. Pieper, but his experience

24   with Class 4 repair stations is limited, Trial Tr. at 693-94, and his testimony rested principally on

25   assumptions about CTAS's conduct that are not borne out by the evidence.  While Mr. Pieper

26   expressed conclusionary opinions that CTAS did not adequately respond to GATX's questions

27   about doublers in 1991 *(see, e.g.*, Trial Tr. at 705-06), his opinion is not supported by the

28   evidence.  Kalitta has offered no evidence that GATX considered CTAS's response to have been

DEFENDANT CTAS'S RULE 50(a) MOTION FOR JUDGMENT AS A MATTER OF LAW

Sedgwick

1    inadequate.  Moreover, Mr. Pieper's conclusory opinions about the standard of care are belied by

2    the complete absence of any evidence that any other repair station using the Hayes STCs ever

3    investigated or notified anyone about the supposed "missing" doublers or stopped modification

4    work because of an alleged inconsistency in the STC data.

5               **C.     CTAS Did Not Cause Harm To Kalitta.**

6               Under California law, a defendant cannot be held liable for negligence unless the

7    defendant's conduct was a "significant factor" in causing harm to the plaintiff.  *See, e.g.*, *Nola M.*

8    *v. Univ. of S. Cal.*, 16 Cal. App. 4th 421, 426 (1993).  This standard encompasses both factual,

9    but-for causation as well as proximate causation.  *See, e.g.*, *Benefiel v. Exxon Corp.*, 959 F.2d

10   805, 807 (1992); *Lopez v. McDonalds Corp.*, 193 Cal. App. 3d 495 (1987).  Proximate causation

11   requires courts to make policy judgments as to whether the alleged acts and harms are too remote

12   in space and time to warrant the imposition of liability.  *See, e.g.*, Restatement (Second) Torts §

13   433.  It is the plaintiff's burden to prove that it is more probable than not that the defendant's

14   conduct actually caused the plaintiff's injuries.  A plaintiff cannot recover based on speculation

15   that the defendant's wrongful acts brought about the harm.  *See, e.g.*, *Padilla v. Rodas*, 160 Cal.

16   App. 4th 742, 752 (2008); *Williams v. Wraxal*, 33 Cal. App. 4th 120, 132 (1995).  If the

17   plaintiff's claims involve an alleged failure to warn, the plaintiff must show that the recipients of

18   the warning would have responded in such a way as to avert the harm.  *See, e.g.*, *Huitt v. S. Cal.*

19   *Gas Co.*, 199 Cal. App. 4th 1586 (2010).  Where causation involves matters beyond the ken of

20   the ordinary layperson, expert testimony is needed to connect the act and injury.  *See, e.g.*, *Jones*

21   *v. Ortho Pharm. Co.*, 163 Cal. App. 3d 396, 403 (1985).

22               Here, Kalitta has failed to establish that CTAS's allegedly negligent conduct was either a

23   cause-in-fact or proximate cause of the issuance of the ADs, much less Kalitta's claimed

24   economic injuries.  The record is silent as to what would have happened had CTAS done what

25   Kalitta now insists was required of it.  There is no evidence that reasonable care by CTAS would

26   have prevented the issuance of the ADs and the grounding of AIA's planes.  To the contrary, the

27   testimony of Mr. Everitt of Hayes, Mr. Fox of the FAA, and others, together with uncontroverted

28   documentary evidence—including evidence that Hayes and GATX had already considered the

DEFENDANT CTAS'S RULE 50(a) MOTION FOR JUDGMENT AS A MATTER OF LAW

1 doubler issue—indicates that nothing would have changed. Furthermore, it is apparent that

2 whatever role CTAS may have played was remote in the time from Kalitta's alleged injury and

3 was dwarfed by the roles of other players, including GATX, Hayes, and the FAA, such that

4 CTAS's supposedly negligent conduct cannot be said to have been a proximate, reasonably

5 foreseeable cause of harm to Kalitta.

6       Furthermore, Kalitta has not rebutted the uncontroverted evidence of independent

7 intervening causes that superseded CTAS's alleged conduct so as to relieve CTAS of liability.

8 *See, e.g.*, Restatement (Second) Torts § 435(2). The FAA's unexpected decision to issue the AD

9 qualifies as a superseding cause. Moreover, there were several intervening causes that account

10 for the financial harm Kalitta claims to have suffered. Mr. Kalitta's decisions, for example, to

11 run his business with no safety cushion and to refuse to take steps to reduce his debt load qualify

12 as intervening causes, as do the actions of Kitty Hawk executives that Mr. Kalitta and others now

13 blame for the bankruptcy of the merged company.[1]

14       **D.     Kalitta Has Failed To Prove That It Is Entitled To Damages.**

15       If liability is established, a plaintiff can recover only those damages that are "reasonably

16 certain." *Piscitelli v. Friedenberg*, 87 Cal. App. 4th 953, 989 (2001). Damages that "are

17 speculative, remote, imaginary, contingent, or merely possible cannot serve as a legal basis for

18 recovery." *Id*. (internal quotation marks omitted). Moreover, there must be "a proximate causal

19 connection . . . between the damage sustained by the plaintiff and the defendant's wrongful act or

20 omission, and the detriment inflicted on the plaintiff must still be the natural and probable result

21 of the defendant's conduct." *Chaparkas v. Webb*, 178 Cal. App. 2d 257, 260 (1960). Typically,

22 where personal property is at issue, the plaintiff's recovery is limited to the depreciation in value

23 of the property or costs of repair, along with compensation for loss of use while repairs are being

24 made. *See, e.g.*, *Hand Electronics, Inc. v. Snowline Joint Unified School Dist.*, 21 Cal. App. 4th

25 862, 870 (1994). This is so regardless of whether the plaintiff had funds to pay for the repairs or

26 replacement property was available.

27
28
[1] Although this case involves intervening, superseding causes (as well as independent, preceding causes), it does not involve concurring causes, whereby CTAS's conduct simultaneously combined with the conduct of others to cause harm. Accordingly, CTAS continues to object to the Court's inclusion of a "concurring cause" instruction in the jury instructions.

DEFENDANT CTAS'S RULE 50(a) MOTION FOR JUDGMENT AS A MATTER OF LAW

Sedgwick

1    A plaintiff may only recover lost profits where they are non-speculative—a showing that

2    is difficult to make where the business lacks an established track record.  *See, e.g.*, *Maggio, Inc.*

3    *v. United Farm Workers of America, AFL-CIO*, 227 Cal. App. 3d 847, 870 (1991); *Sanchez-*

4    *Corea v. Bank of America*, 38 Cal. 3d 892, 907 (1985).  Moreover, where a plaintiff claims that

5    its property had some "peculiar value," the plaintiff may not recover that value unless the

6    plaintiff shows that the defendant had notice of it.  *See* Cal. Civil Code § 3355.  Finally, a

7    plaintiff's recovery must be reduced to the extent the plaintiff fails to mitigate its damages.

8    In this case, Kalitta has advanced a novel damages theory that finds no support in the law

9    or the facts.  Kalitta seeks to recover damages based on the lost value of its entire company even

10   though the only harm that CTAS is even alleged to have caused pertains only to two temporarily

11   grounded aircraft.  Such damages are inherently speculative and remote from any conduct of

12   CTAS.  In particular, any damages flowing from the poor performance of Kitty Hawk cannot

13   reasonably be attributed to CTAS given that Kalitta itself blames Kitty Hawk's poor

14   management for those losses.  It is impossible to know with reasonable certainty how Kalitta's

15   business would have done absent the groundings, particularly because Mr. Kalitta had chosen to

16   run it with no margin for error.  Kalitta is essentially claiming that its planes had a peculiar

17   value—namely, they were the linchpin of the entire company.  There is no evidence, however,

18   that CTAS was ever on notice of this, and it therefore cannot be required to foot the bill for these

19   companywide losses.

20   Kalitta's related claim of lost profits is likewise too speculative to succeed.  Although

21   AIA was an established company, uncontroverted testimony indicates that 747s were a new part

22   of AIA's business, and AIA lacked a track record of profitability or any concrete evidence of lost

23   business, such as contracts it was unable to honor.  At most, Kalitta should be allowed to recover

24   for the lost value of the two planes.

25   / / /

26   / / /

27   / / /

28   / / /

6                    Case no. 4:96-cv-02494-CW

DEFENDANT CTAS'S RULE 50(a) MOTION FOR JUDGMENT AS A MATTER OF LAW

III.    **CONCLUSION**

For the foregoing reasons, the Court should grant CTAS judgment as a matter of law.


DATED:  November 27, 2011          SEDGWICK LLP

                                   By: */s/ Gregory C. Read*
                                        Gregory C. Read
                                        Attorneys for Defendant
                                        CENTRAL TEXAS AIRBORNE SYSTEMS, INC.


DATED:  November 27, 2011          STEVEN L. LEVITT & ASSOCIATES, P.C.



                                   By: */s/ Steven L. Levitt*
                                        Steven L. Levitt
                                        Attorneys for Defendant
                                        CENTRAL TEXAS AIRBORNE SYSTEMS, INC

DEFENDANT CTAS'S RULE 50(a) MOTION FOR JUDGMENT AS A MATTER OF LAW