IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KALITTA AIR, LLC,<br><br>    Plaintiff,<br><br>  v.<br><br>CENTRAL TEXAS AIRBORNE SYSTEMS,<br>et al.,<br><br>    Defendants.<br>_____/ | No. C 96-2494 CW<br><br>ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR REVIEW OF CLERK'S NOTICE OF TAXABLE COSTS AND GRANTING STAY |

    Plaintiff Kalitta Air moves for review of the Clerk's notice of taxable costs and an order setting taxable costs in this matter at $177,000. Kalitta also requests that the Court stay collection of costs pending the outcome of its appeal. Defendant Central Texas Airborne Systems (CTAS) opposes the motion, arguing that all but a few items in the Clerk's award of $691,591.783 were proper. CTAS does not oppose Kalitta's request for a stay, but argues that Kalitta should be required to post a supersedeas bond in the amount of 150 percent of the costs awarded. The matter was decided without oral argument. Having considered all of the papers filed by the parties, the Court GRANTS IN PART Plaintiff's motion for review of the Clerk's taxation of costs, and GRANTS Plaintiff's request to stay collection of costs pending appeal. The Court orders Plaintiff to post a supersedeas bond in the amount of fifty percent of the taxable costs or $311,018.19.

BACKGROUND

In 1996, Kalitta Air filed a lawsuit against numerous Defendants, including CTAS. In 2001, a jury rendered a verdict in favor of CTAS. The Clerk awarded CTAS $489,319.37 in taxable costs, and, on Kalitta's motion, the Court reduced the taxable costs to $355,370.08. The Court stayed collection of those costs pending Kalitta's appeal, and ordered Kalitta to post a supersedeas bond in the amount of 50 percent of the taxable costs. In 2003, the Ninth Circuit affirmed in part and reversed in part this Court's decision and remanded the case. In 2005, a second jury trial resulted in a mistrial, and the Court granted in part CTAS's motion for judgment as a matter of law. Kalitta appealed and CTAS cross-appealed. In 2008, the Ninth Circuit again affirmed in part and reversed in part this Court's decision and remanded the case. In 2012, a third jury rendered a verdict in favor of CTAS. Kalitta has filed a notice of appeal to the Ninth Circuit.

On April 10, 2012, CTAS sought $724,021.37 in costs. On May 8, 2012, the Clerk awarded CTAS $691,591.73 in taxable costs. The Clerk found that CTAS was entitled to $1,310 in Fees of the Clerk, $300,632.78 for exemplification and copies, $20.00 for docket fees, $34,178.87 for depositions subsequent to the first trial, and the $355,370 awarded by the Court after the first trial. See Civil L.R. 54-3(c), (d), (f).

DISCUSSION

I. Taxable Costs

   A. Equity Argument

Kalitta first argues that it is inequitable to tax costs at the level awarded by the Clerk. "Federal Rule of Civil Procedure 54(d)(1) creates a presumption in favor of awarding a prevailing party its costs other than attorneys' fees, but vests in the district court the discretion to refuse to award such costs if the district court gives specific reasons explaining why the case is not ordinary and why it would be 'inappropriate or inequitable to award costs.'" Jack Russell Terrier Network v. Am. Kennel Club, Inc., 407 F.3d 1027, 1038 (9th Cir. 2005) (quoting Ass'n of Mexican-Am. Educators v. California, 231 F.3d 572, 591, 593 (9th Cir. 2000) (en banc)).

Kalitta bases its equity argument on its contentions that the case was close and difficult, it litigated in good faith, and, it asserts, many of the costs were caused by CTAS's decision to change its trial strategy after the first trial. However, more than half of the costs taxed are the costs already awarded by the Court following the first trial. More importantly, the primary case cited by Kalitta in support of its argument emphasizes the losing party's financial resources as a factor in determining whether to deny costs. See Ass'n of Mexican-American Educators, 231 F.3d at 591. Indeed, the losing party's ability to pay for the costs is a significant factor in many cases in the Ninth Circuit. See, e.g., Jack Russell Terrier Network, 407 F.3d at 1038 (affirming the denial of costs where the district court noted the losing party's "lack of financial resources"). Kalitta is

3

clearly able to pay CTAS's costs in this case. See Plaintiff's Reply at 7 ("Kalitta's financial condition is such that its ability to pay the costs in the event of an unsuccessful appeal are beyond question.").

The Court finds that the equities do not support a reduction of CTAS's costs.

B. Reduction of Costs Claimed by CTAS

Kalitta next argues that various items in CTAS's bill of costs should be reduced because they go beyond what is permitted.

1. Pro Hac Vice Admission

The Clerk awarded CTAS $1,310 for pro hac vice admission fees. Kalitta argues such fees are not proper taxable costs. There is no rule in the Ninth Circuit regarding such fees, and some courts have allowed such costs, while others have not. See Competitive Technologies v. Fujitsu Ltd., 2006 U.S. Dist. LEXIS 98312, at *12-13 (N.D. Cal.) (noting that "the Ninth Circuit has not addressed this issue" and that "a number of district courts in the Ninth Circuit have not allowed such fees to be recovered"); but see SEIU v. Rosselli, 2010 U.S. Dist. LEXIS 122202, at *10 (N.D. Cal.) (allowing recovery of $1,260 in pro hac vice fees). The Clerk's order awarding $1,310 for pro hac vice admission fees is affirmed.

2. Exemplification and Copying Costs

Under 28 U.S.C. § 1920, the court may tax "the costs of making copies of any materials where the copies are necessarily obtained for use in the case." Local Rule 54-3(d) clarifies what are "necessarily obtained" copies. For example, the cost of copying disclosures or formal discovery documents is allowable,

4

while the cost of copying motions, pleadings and notices is not. CTAS claimed $318,457.19 in exemplification and copying costs. The Clerk reduced this amount to $300,632.78. Kalitta argues that this amount should be reduced further on several bases.

### a. In-House Copying Costs

CTAS has claimed $26,186.95 and $13,430.15 for in-house copying costs incurred by the two law firms that represented it. These amounts represent a voluntary fifty percent discount by CTAS. Kalitta argues that CTAS has failed to establish that the amount sought was for copies made for permissible purposes. CTAS responds generally that it need not provide "copy-by-copy documentation of costs."

The invoices submitted by CTAS do not indicate the purpose of the copies made. The invoice for in-house copying by the Sedgwick firm does not even indicate the number of pages copied, or the amount charged per page. See Docket No. 2234, Exhibit B, Part 2, Pages 42-74. The invoice indicates only the date on which the copies were made and the total amount charged. The invoice for in-house copying by Steven Levitt & Associates, P.C. includes the page count and rate per page for some entries, but not all. See Docket No. 2234, Exhibit B, Part 2, Pages 22-41. While CTAS need not provide a description for each individual page copied, its documentation provides no basis for determining which, if any, of the in-house copying costs are taxable.

Moreover, because CTAS has failed to provide documentation of the number of copies made or the rate charged for those pages, it is impossible for the Court to make any determination of the reasonableness of these costs. Cf. Meier v. United States, 2009

U.S. Dist. LEXIS 31391, at *6-7 (N.D. Cal.) (finding that party's claim of costs "for approximately 5,000 pages of in-house copying taxed at a rate often cents per page" was reasonable).

CTAS's argument that it has voluntarily discounted its in-house copying costs by fifty percent is unavailing in light of the amount sought and the lack of documentation of the number of copies made, the amount charged per copy, and the purpose of the copies. The cases it cites in support of this argument are distinguishable. Cf. Langston v. N. Am. Asset Dev. Corp. Group Disability Plan, 2010 U.S. Dist. LEXIS 12507, at *28 (N.D. Cal.) (reducing by twenty-five percent a claim of $539 for 3,850 pages at a rate of fourteen cents per page to $404.25); Saberi v. BFS Retail & Commer. Operations, LLC, 2011 U.S. Dist. LEXIS 54864, at *23 (N.D. Cal.) (accepting a twenty percent voluntary discount on non-discovery-related copying costs where the party "scrupulously detailed the costs sought to be recovered as best it could" and submitted a table "specifying cost [and] specific statute authorizing cost").

The Court grants Kalitta's motion with respect to CTAS's in-house copying costs and disallows $39,617.10 in costs.

      b. Visual Aid Development

Civil Local Rule 54-3(d)(5) provides, "The cost of preparing charts, diagrams, videotapes and other visual aids to be used as exhibits is allowable if such exhibits are reasonably necessary to assist the jury or the Court in understanding the issues at trial." The cost of reproducing exhibits is allowable when copies of the exhibits were required by a judge. Civil L.R. 54-3(d)(4).

Kalitta challenges charges submitted for visual aid development by graphics consultants, first arguing that the exhibits were not reasonably necessary. This case involved complex engineering and financial concepts. The Court finds that the exhibits presented by CTAS were reasonably necessary to assist the jury and the Court in understanding the issues in the case.

Kalitta next argues that CTAS is overreaching, attempting to recover for time spent developing the content of the exhibits rather than the physical creation and duplication of those exhibits. "Fees for exemplification and copying are permitted only for the physical preparation and duplication of documents, not the intellectual effort involved in their production." Zuill v. Shanahan, 80 F.3d 1366, 1371 (9th Cir. 1996) (internal quotations omitted). Accordingly, costs for things such as meetings, on-site trial support, case review, and coordination are not permissible because they "do not arise from the physical preparation of demonstratives." Computer Cache Coherency Corp. v. Intel Corp., 2009 U.S. Dist. LEXIS 122596, at *7-8 (N.D. Cal.).

The Court has reviewed the invoices from FTI Consulting, Fulcrum Legal Graphics and LegalEdge submitted by CTAS and found that there are multiple entries for meetings and telephone calls, trial consulting, on-site trial support, and other impermissible charges. It is not entirely clear from the invoices produced how much time was spent on the impermissible items. However, CTAS bears the burden of demonstrating the reasonableness of the costs incurred. The Court finds that a further reduction of $16,500 is reasonable.

### c. Production of Deposition Clips to Be Played Before the Jury

Kalitta argues that CTAS should not recover costs associated with the production of deposition clips to be played for the jury because these costs are in excess of the "cost of an original and one copy of any deposition" permitted by Local Rule 54-3(c)(1). However, as discussed above, Local Rule 54-3(d)(5) allows recovery of costs for "videotapes and other visual aids to be used as exhibits." Courts have allowed costs for the production of deposition clips pursuant to Local Rule 54-3(d)(5) because such clips can "assist[] the jury in understanding the evidence." City of Alameda v. Nuveen Mun. High Income Opportunity Fund, Nos. 08-4575, 09-1437, 2012 U.S. Dist. LEXIS 7403, at *10 (N.D. Cal.), citing BDT Prods, Inc. v. Lexmark Int'l, 405 F.3d 415, 419-20 (6th Cir. 2005); see also Hynix Semiconductor Inc. v. Rambus Inc., 697 F. Supp. 2d 1139, 1150-51 (N.D. Cal. 2010) (allowing the taxation of costs related to video synchronization).

The Court finds that the costs for preparing deposition clips to be played for the jury are allowable. However, the invoice to which Kalitta objects includes costs beyond the production of those deposition clips. These costs, including trial presentation support, duplication and shipment of hard drives, trial preparation, setting up and striking a war room, meetings and reviewing outlines are not recoverable. As discussed above, costs related to exhibits are only recoverable to the extent that they "arise from the physical preparation of demonstratives." Computer Cache Coherency Corp., 2009 U.S. Dist. LEXIS 122596, at *7-8. CTAS has applied a voluntary thirty percent reduction to the

8

relevant invoice to account for any expenses not directly related to the physical preparation of the deposition clips. However, after reviewing the invoice, the Court finds that the thirty percent reduction is not sufficient. Instead, the Court finds that a fifty percent reduction is more appropriate. Accordingly, the Court disallows an additional $9,906.90 in costs.

3. Deposition Costs

CTAS claimed $48,864.27 in costs for depositions after the first trial in this matter. The Clerk then reduced this amount by $14,685.40. Kalitta now argues that these costs should be further reduced on several grounds.

    a. Costs Beyond Exemplification or an Original and One Additional Copy of Depositions

Kalitta objects to CTAS's claim for costs related to the following items that appear on various invoices: $2,012.50 in videoconference and internet streaming fees for depositions; $225 for ASCII discs; $1,127 for "Condensed Transripts," "E-mail of e-trans," "Interactive Realtime," and "LEF File"; and $112.75 for next day air delivery. CTAS waives its request for these costs. Accordingly, the Court reduces the bill of costs by $3,477.25.

Kalitta also objects to two additional items related to these invoices: "DVD Copy" and "Compact Disc transferred from VHS." Kalitta argues that allowing recovery for the cost of a DVD copy of a videotaped deposition in addition to the written transcript exceeds the allowable cost. Local Civil Rule 54-3(c)(1) provides, "The cost of an original and one copy of any deposition (including video taped depositions) taken for any purpose in connection with

9

the case is allowable. CTAS points to this Rule's allowance of costs for videotaped depositions.

Several courts in this district have interpreted Rule 54-3(c)(1) to allow a party to recover the cost of one DVD copy in addition to the stenographic transcript for videotaped depositions. See, e.g., Asyst Techs. v. Emtrak Inc., 2009 U.S. Dist. LEXIS 23834, at *7-8 (N.D. Cal.); Pixion Inc. v. PlaceWare Inc., 2005 U.S. Dist. LEXIS 11351, at *5-6 (N.D. Cal.); MEMC Elec. Materials v. Mitsubishi Materials, 2004 U.S. Dist. LEXIS 29359, at *17-33, n.5-14 (N.D. Cal.), citing Tilton v. Capital Cities/ABC, 115 F.3d 1471 (10th Cir. 1997); Meredith v. Schreiner Transport, 814 F. Supp. 1004 (D. Kan. 1993). This Court agrees and finds that a prevailing party may recover costs for both the stenographic and video copies of a videotaped deposition when both are reasonably necessary.

It appears that the two entries for "DVD Transferred from VHS" and "Compact Disc transferred from VHS" are charges for the creation of a single video copy of a videotaped deposition and are therefore allowable. However, the invoice for the "DVD Copy" shows that CTAS received two DVD copies of the deposition for $110. Accordingly, the Court reduces the bill of costs by $55.

      b.    Transcript Synchronization for Depositions from the First Trial

Kalitta next objects to invoices for "Transcript Synchronization" of four depositions from 1999, arguing that these are costs for impermissible additional copies of depositions. However, as discussed above, such costs are recoverable as exemplification costs, because the purpose of the synchronization

10

was to create deposition clips to show to the jury. Kalitta's requested reduction of costs related to video synchronization is denied.

        c.    Deposition Costs from the First Trial

Kalitta argues that certain deposition costs from the first trial should be further reduced from the amount awarded by the Court in 2002. However, Kalitta provides no basis for revisiting that order. The Court will not further reduce the costs from the first trial.

        d.    Summary of Additional Reductions from the Clerk's Taxation of Costs

        1.    $39,617.10 in in-house copying costs

        2.    $16,500 in visual aid production costs

        3.    $9,906 in exemplification costs related to the production of deposition clips

        4.    $3,477.25 in costs waived by CTAS

        5.    $55.00 for a second DVD copy of a deposition

**Total Reduction:**    $69,555.35

**Total Net Costs Awarded:** $622,036.38

    C.    Stay of Collection

Federal Rule of Civil Procedure 62(d) provides that an appellant may obtain a stay of execution on the judgment of the district court after posting a supersedeas bond. "The posting of a bond protects the prevailing party from the risk of a later uncollectible judgment and compensates him for delay in the entry of final judgment." National Labor Relations Board v. Westphal, 859 F.2d 818, 819 (9th Cir. 1988). Kalitta moves for an order staying collection of the judgment for costs without first posting

11

a supersedeas bond. Kalitta argues, as it did in 2002, that a judgment for costs is distinguishable from other judgments and should be stayed until the appellate process is complete, citing Brown v. American Enka Corp., 452 F. Supp. 154, 160 (E.D. Tenn. 1976).

The Court again finds that there is nothing in the language of Rule 62 that suggests that a judgment for costs should be treated differently than any other judgment. Accordingly, the Court requires Kalitta to post a supersedeas bond in order to stay the enforcement of the judgment for costs. The parties disagree as to the amount of the bond that the Court should require. The Court exercises its discretion to order a bond in the amount of fifty percent of the taxable costs.

## CONCLUSION

For the foregoing reasons, Kalitta's motion for an order modifying the Clerk's assessment of taxable costs and setting taxable costs is GRANTED in part and DENIED in part. Taxable costs of $622,036.38 are awarded. Kalitta's request to stay collection of costs pending appeal is GRANTED, on condition that Kalitta post a supersedeas bond in the amount of fifty percent of the taxable costs or $311,018.19.

IT IS SO ORDERED.

Dated: 12/5/2012

CLAUDIA WILKEN
United States District Judge